EL PUEBLO, DEMANDANTE Y APELADO, *v.* ARRIETA, ACUSADO
Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Arecibo en
causa por infracción de la ley de automóviles.

No. 1467.—Resuelto en abril 16, 1920.

PRUEBA—EVIDENCIA VOLUNTARIAMENTE SUPRIMIDA.—El dejar de presentar a un
testigo cuya declaración por algún motivo no tiene importancia relativamente,
o es acumulativa o inferior a la de otros testigos que han declarado en el jui-

cio, no constituye una supresión voluntaria de pruebas, ni sostiene por tanto la inferencia de que de haber declarado dicho testigo ausente su declaración hubiera sido adversa.

Los hechos están expresados en la opinión.

Abogados del apelante: Sres. *M. Guerra* e *I. Soldevila.*

Abogado del apelado: *Sr. J. E. Figueras, Fiscal.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

Ramón Arrieta fué declarado culpable de una infracción del artículo 12, disposición D, de la ley "para reglamentar el uso de vehículos de motor en Puerto Rico, y para otros fines", aprobada en abril 13 de 1916. La sección a que se ha hecho referencia prescribe lo siguiente:

"(*a*) Las personas que manejan vehículos de motor en los caminos públicos, deberán, en todo tiempo, ejercer el debido cuidado y tomar precauciones razonables para garantizar la seguridad de vidas y propiedades."

"(*d*) Los vehículos de motor que transitan por caminos públicos deberán marchar lo más a la derecha que fuere posible, y esta precaución deberá observarse particularmente cuando se está doblando una curva. En este caso deberá siempre darse aviso con la bocina o aparato de alarma."

La sección 18 de la misma ley prescribe que las infracciones de las disposiciones de esta ley serán consideradas como delitos menos graves y castigados con multa o prisión.

Se alega en la acusación que el día 18 de marzo de 1919, en el kilómetro 113, entre los hectómetros 9 y 10 de la carretera de Quebradilla a Isabela, el acusado Ramón Arrieta voluntaria, ilegal y negligentemente, manejando un automóvil y doblando una curva llamada "Bajada de Guajataca" lo hizo por su izquierda y sin tomar la precaución de dar aviso con la bocina u otro aparato de alarma, lo que ocasionó el choque con otro automóvil manejado por Luis Fernández en dicho sitio.

Insiste el apelante en que la corte inferior cometió error al apreciar la prueba y no conceder al acusado el beneficio

de la presunción de que la declaración de un policía que llegó al sitio de los sucesos poco después de haber ocurrido el choque de haber sido presentada por el fiscal, le hubiera sido adversa.

Luis Fernández, el *chauffeur* a quien se menciona en la acusación, declaró que él bajaba con su automóvil por la parte cerrada de una curva que estaba a su derecha próxima a la montaña y se enfrentó con el automóvil Studebaker que guiaba el acusado, el cual se le fué encima al auto que conducía el testigo; que supo que venía el automóvil del acusado cuando ya lo tenía encima, pues no tocó bocina ni dió ningún aviso; que su automóvil sufrió la rotura del *bumper* y del guarda lodo izquierdo y que el *bumper,* identificado por el testigo fué doblado por la rueda del auto del acusado; que el testigo iba manejando un automóvil Dodge como de un año de uso; que el testigo tocaba su bocina y caminaba con el motor apagado embragado en segunda y no oyó ningún aviso del otro; que el Studebaker es un carro más potente que el Dodge; que el testigo insistió en que los carros permanecieran donde estaban y fué a Quebradillas a buscar a un policía; que a la izquierda de la carretera habían montones de piedra situados a nueve pies delante del carro Studebaker; que el testigo no sabe si el policía que midió presentó una denuncia.

Augusto Font que se encontraba en el carro guiado por Fernández, declara que iban bajando una curva y tocando constantemente la bocina; que el testigo no oyó aviso alguno del otro automóvil sino que lo vió cuando ya estaba encima de ellos; que el otro carro, guiado por el acusado, venía por la izquierda de la carretera; que el testigo estaba en el asiento de atrás a la derecha, al lado de la montaña y fué lanzado por ese lado de la puerta que se abrió.

Telesforo Cabán, que era otro pasajero del Dodge declaró que en los momentos de tomar la curva asomó otro automóvil por su izquierda, guiado por el acusado, y chocó con ellos; que el testigo no oyó absolutamente ningún instru-

mento de alarma del otro carro; que el carro en el cual el testigo viajaba iba por la derecha de la carretera; que bajaba despacio y tocaba la bocina; que los dos automóviles quedaron enlazados y el automóvil de Arrieta arrastró al otro hacia el centro de la carretera, haciéndolo parar a dos pasos cortos de la cuneta.

Andrés B. Crosas, dueño del auto Dodge, y también uno de los pasajeros, declara que antes de doblar la curva su *chauffeur* tocó la bocina; que iban a una velocidad reducida, y ellos, que iban a su derecha, no pudieron meterse más porque iban a chocar con la pared donde hay un alto, que de pronto se presentó el otro carro, el cual chocó con ellos sin dar aviso; que el otro carro iba por la izquierda de la carretera metido en la curva que era bien cerrada, y que la rueda delantera del otro carro cogió el *bumper* del carro del testigo como a una cuarta de donde se quedó fijo en la sopanda, quedando los dos carros enredados.

La prueba de la defensa consistió en la declaración de Ramón Arrieta, al efecto de probar que iba subiendo una cuesta donde había piedras trituradas y un precipicio a su derecha, conservando su derecha y tocando el *klaxon*; que Fernández iba bajando con mayor velocidad; que el testigo iba subiendo una cuesta en segunda porque su carro estaba malo y Fernández se turbó cuando lo vió; que el testigo caminaba pegado a las metradas de piedra, aplicó el freno y paró su carro frente a las metradas; que Fernández se turbó, desvió a la izquierda y Font fué lanzado por la puerta del carro y cayó como a dos metros frente al carro; que si hubiera ido el otro carro por la derecha hubiera dado contra la montaña y no en la carretera; que Ramón Arrieta, primo del testigo, la señora de éste, y su cuñada, quien recibió una herida en el lado izquierdo, iban en el carro con el testigo; que el testigo vió a un policía que llegó en un coche, a quien fué a buscar Fernández, el cual hizo una investigación e informó a su favor; que cuando llegó el policía su carro estaba frente a la metrada de piedras, pegado, habiendo parado

como a una cuarta casi en el metro; que fué Crosas quien mandó a buscar el policía.

El apelante cita, de la obra de "David, Ley sobre Vehículos de Motor," las secciones 94 y 95, las cuales son como siguen:

"Sección 94.—Una persona que maneja un automóvil y otra que va legalmente por el camino en otra forma, ordinariamente tienen iguales derechos al camino y cada una de ellas está en la obligación de ejercitar su derecho con el debido miramiento al derecho del otro. Ambas partes tienen iguales deberes de acuerdo con la ley.

"Sección 95.—Deberá ejercitarse razonable cuidado para evitar un accidente tanto por los que manejan vehículos de motor, como por las demás personas que se encuentran en las carreteras, cada una de las cuales tiene derecho a suponer que la otra cumplirá con este deber. El conductor de un automóvil tiene derecho a suponer y a proceder por virtud de la suposición de que toda persona a quien encuentre ejercitará ordinario cuidado y precaución de acuerdo con las circunstancias y no se expondrá a ningún peligro por su negligencia o descuido, sino que más bien tratará de evitarlo. Y las personas que legalmente se encuentren en la calle o carretera no están obligadas a suponer que habrá negligencia por parte de los automóviles que pueda causarle perjuicios."

Se hace esta cita, según parece, por tener relación con el derecho del acusado y el deber de Fernández, pero es igualmente aplicable al derecho de Fernández y al deber del acusado. Y es la conducta del acusado y no la de Fernández la que tenemos que ver en primer término.

El mismo autor dice que "en el manejo de vehículos de motor los conductores deben obedecer la 'ley del camino'" (sec. 100). Y continuando la discusión de "las reglas del camino," se dice que "la violación de estos preceptos, de acuerdo con la regla que ha sido reconocida por el peso de las autoridades, constituye negligencia. Si un choque tiene lugar y resulta que una de las partes iba por el lado que no debía llevar en el camino, la presunción generalmente está en contra de tal persona." (Sec. 104).

Y se dice además que "los conductores de vehículos de

motor están mutuamente obligados a acatar las reglas de carreteras, y se les somete a mayor obediencia, al parecer, que a los conductores de vehículos más livianos y de menor velocidad.'' Sec. 170.

Sin embargo, la cuestión en el presente caso, como ya hemos indicado, no es si la negligencia del acusado fué o no la causa próxima del choque, o si Luis Fernández era o no culpable de negligencia contributoria, sino pura y simplemente si el acusado en el momento en cuestión, al doblar la curva, tomó el lado izquierdo de la carretera y dejó de tocar su bocina en abierta violación del claro precepto estatutorio anteriormente citado. La prueba en cuanto a esto era contradictoria, como se indica en la anterior reseña, y no podemos decir que la corte sentenciadora cometió error al aceptar la declaración de los testigos de la acusación con preferencia a la declaración no corroborada del acusado, por constituir la verdadera versión del accidente.

El apelante no cita ninguna autoridad en apoyo de su segundo señalamiento de error que no sea la vaga alusión que hace a la Ley de Evidencia y según parece no tiene gran confianza en este punto. El artículo 102 de la Ley de Evidencia, al enumerar ciertas presunciones disputables, menciona las siguientes:

(5) Que la evidencia voluntariamente suprimida resultará adversa si se ofreciere:

(6) Que toda evidencia superior habrá de ser adversa a la presentación de otra inferior.

''La omisión en presentar al tribunal alguna circunstancia, documento o testigo, cuando la parte misma o su adversario alegan que los hechos que así han de dilucidarse sirve para indicar, como consecuencia más natural, que la parte teme hacerlo y este temor es cierta prueba de que de ser presentada la circunstancia, o documento, o testigo, hubiera revelado hechos no favorables a la parte. Estas inferencias, es cierto, no pueden justamente hacerse excepto bajo ciertas condiciones; y están también sujetas siempre a quedar aclaradas por circunstancias que hacen que alguna otra hipótesis sea más natural que el temor de la parte por su exposición. Pero en

general no se duda de la corrección de tal inferencia. La no presentación de prueba que naturalmente debió haber sido presentada por un litigante honrado y por tanto que no teme, permite hacer la inferencia de que su contenido no es favorable a la causa de la parte.'' Wigmore sobre Evidencia, Sección 285.

''Queda alguna incertidumbre en la consideración judicial de ciertas condiciones preliminares a la inferencia. Es claro que la inferencia se basa no en el simple hecho de que determinada persona no ha sido presentada como testigo, sino en no presentarla cuando sería natural suponer que dicha persona hubiera sido presentada si los hechos que conocía hubieran sido favorables.'' *Idem.*, sec. 286.

''Parece ser claro que una persona podría muy bien prescindir por las razones generales relativas a gastos e inconvenientes sin temer al contenido de sus declaraciones de testigos cuyas declaraciones por alguna razón no son relativamente importantes, o que son acumulativas o inferiores. En otras palabras, expresándolo más fuertemente existe una limitación general que en su aplicación depende de los hechos de cada caso que la inferencia no puede lógicamente deducirse, como no sea de la no presentación de testigos cuyas declaraciones serían superiores en cuanto al hecho que ha de probarse. Esta limitación no debe exijirse con ningún rigor, pues de otro modo prácticamente quedaría sujeta a oposición, pero en principio es saludable y a menudo ha sido reconocida.'' *Idem.*, sección 287.

En el presente caso el testigo Fernández se refiere a la marca que dejó el automóvil al patinar y fija la distancia que aparentemente midió el policía que había entre el frente del Studebaker y el montón de piedras. El dobléz o ruptura del *bumper* fué presentado en el juicio y varios testigos declararon más o menos detalladamente en cuanto a las condiciones físicas. El policía no fué testigo ocular de lo que realmente ocurrió y sólo pudo haber declarado respecto a los hechos físicos que fueron observados por él a su llegada. En tanto en cuanto aparece de los autos, su declaración hubiera sido meramente acumulativa y en todo caso no pudo haber declarado de nada que al parecer no fuera conocido de las otras personas que se encontraron presentes al ocurrir el accidente quienes comparecieron al juicio.

En vista de las circunstancias no resulta absolutamente claro que su declaración hubiera constituído "mejor prueba" que la que verdaderamente fué aducida, o que la misma fué voluntariamente eliminada por el fiscal.''

Pero a menos que tengamos que asumir que la corte inferior adoptó tal criterio sobre el particular, no existe nada en los autos que demuestre que el acusado no recibió el completo beneficio de la presunción de que de ser presentada la declaración del policía, hubiera sido adversa a la acusación. Y como quiera que esto fuere, hemos reseñado lo suficiente de la prueba para demostrar que si el juez sentenciador estaba inclinado a creer, como evidentemente creyó, a los testigos del gobierno, entonces la consideración de tal presunción sin otra cosa, difícilmente podría haber afectado al resultado.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.